*In re* VAN SYCKLE'S ESTATE.

1. ESTATES OF DECEDENTS—LIMITATION OF ACTIONS—CLAIMS—PRO-BATE COURT—JURISDICTION.

Where, after the claims of the creditors of an estate have been regularly allowed, and while the estate remains open, in the charge and control of the probate court, proceedings to satisfy the debts were deferred for the mutual protection of the creditors and heirs, with the knowledge and consent of the administrator, the probate court, the creditors, and the heirs, there is no statute of limitations to prevent the creditors of the estate from obtaining the delayed payment of their adjudicated claims.

2. SAME—GOOD-FAITH PURCHASERS.

Purchasers of the rights of the heirs in real estate, with full knowledge of the claims of creditors, are in no better position than would be the heirs.

Error to Wayne; Collingwood, J., presiding. Submitted June 11, 1918. (Docket No. 49.) Decided July 18, 1918.

Thomas T. Leete, Jr., administrator of the estate of William H. Van Syckle, deceased, filed a petition in the probate court for license to sell certain real estate for the purpose of paying debts. From an order granting the petition, Paul C. Renaud and another, owners of the interests of the widow and surviving son of deceased, appealed to the circuit court. Judgment overruling the order of the probate court. The administrator brings error. Reversed.

*Corliss, Leete & Moody* (*Paul B. Moody*, of counsel), for appellant.

*Monaghan, Monaghan, O'Brien & Crowley*, for appellees.

STONE, J. This case is here for review of an order of the circuit court of Wayne county reversing an order of the probate court directing the sale of real estate to pay debts of the estate of William H. Van Syckle, deceased.

The history of the estate is as follows: William H. Van Syckle died intestate April 15, 1893, leaving as heirs a widow and two minor children, one of whom subsequently died. Whatever property interests deceased left, other than the land in question here—known as the Henry street property—were all exhausted in mortgage foreclosures, widow's allowances and some small incidental expenses of administration. Creditors have so far received nothing. As to the Henry street property, the situation was as follows: Under the will of his father, the deceased had an interest in remainder subject to a mortgage and the life estate of his stepmother. This remainder became an asset of the estate, subject further to the dower of the widow of deceased.

Letters of administration were granted to Thomas T. Leete, Jr., on May 23, 1893, the usual order on the

same date being entered that the administrator be allowed one year thereafter, within which to dispose of the estate and pay the debts. Report of commissioners on claims was filed December 19, 1893, claims being subsequently filed and allowed by the court January 11th and May 2, 1894. A license to sell real estate was granted February 6, 1894, and on May 19, 1894, report was filed and duly confirmed showing the sale of other property, the Henry street property not being then advertised or sold.

The administrator filed his first account August 20, 1895, which showed, among other things, that the interest of the estate in the Henry street property still remained. On May 31, 1902, the administrator filed a further report covering the whole period, in which it was stated:

"The real estate described in the inventory has been disposed of in accordance with the order of this court, or by the foreclosure of mortgages and forfeiture of land contracts, except the following: (Here follows the Henry street property.) The interest of deceased in said real estate has not been sold, for the reason that, in the opinion of the administrator, sale thereof could not be made without great sacrifice to the estate of deceased by reason of the outstanding life estate held by Libbie Van Syckle therein."

This report was duly advertised, examined and allowed by the probate court, June 24, 1902. On September 23, 1908, the administrator, in response to an order entered September 9, 1908, filed his third account which contained a similar statement.

In the year 1913, Paul C. Renaud and Charles W. Burton purchased the interests of the widow and surviving son of deceased, in this property. On February 9, 1915, the administrator filed a petition in the probate court for license to sell this real estate for the purpose of paying the debts. After due proof of publication, upon hearing March 16, 1915, the probate

court granted a license to sell. Plaintiffs herein having appeared and filed their objections in the probate court, appealed from this order. In their notice of appeal they, as owners of the fee of said lands, .claimed that there were no legal debts and charges outstanding against said estate; that all alleged claims of record were outlawed by virtue of the statute of limitations; that all alleged claimants had no valid standing in court by reason of their laches in not pressing their claims within a reasonable and lawful period of time; and that good faith purchasers have become possessed of the fee or remaindermen estate in said lands, and that such a sale would be an unjust and unlawful interference with their legal and equitable rights.

Upon the trial in the circuit court it appeared in evidence that there were duly proven unpaid debts amounting to over $3,900, and interest thereon; that the real estate market in Detroit in the year 1893, and for several years thereafter, was in a very unfavorable condition, and on that account, and because of the intervening life estate, combined with outstanding mortgage and dower interests, the administrator believed that sale could not be had of the property without great sacrifice of the interests of both the heirs and the creditors, and in fact that the heirs would have received nothing if such sale had been made; that this view was discussed with the probate judge personally many times, and was incorporated in the administrator's report and met the approval of the probate court; that this condition of affairs continued with the knowledge and consent not only of the probate court and of the administrator, but of the creditors and the heirs, the latter having moved to North Dakota, being in frequent personal touch with the administrator. It appeared that plaintiff Renaud carried on all of the negotiations for the purchase of the heirs' interests by letter. The correspondence

was put in evidence, from which it appeared that said plaintiff knew of the debts and mortgage and the condition of the estate.

It further appeared that the heirs'in making their sale understood and expected that the debts of the estate were to be paid; and that plaintiff Renaud had obtained assignments of some of the claims at ten cents on the dollar and had offered five cents for others.

The trial court set aside the order of the probate court, and denied sale of the real estate. The estate has brought error, and the principal question raised by the assignments of error is whether, after the claims of the creditors have been regularly adjudicated and allowed, and while the estate remains open, in the charge and control of the probate court, and because proceedings for sale to satisfy the debts were deferred for the mutual protection of the creditors and heirs, and with the knowledge and consent of the administrator, the probate court, the creditors and the heirs, the creditors lose the right, and the court the jurisdiction, to enforce their claims as against plaintiffs who stand in the shoes of the heirs by purchase.

It is asserted by appellant that appellees rely upon sections 13883, 13884, and 13886, 3 Comp. Laws 1915, as a "statute of limitations," and that it is their contention, which was apparently adopted by the trial court, that the above are mandatory provisions, and that the expiration of this four years and six months period arbitrarily cuts off all right on the part of creditors to have their claims satisfied, and all jurisdiction in the probate court to order a sale for such purpose. It is urged by appellant that this is not the law, and that there is no statute of limitations covering such a case as is here presented. It is true that section 13891, 3 Comp. Laws 1915, contemplates a

decree of the probate court, for payment of debts and distribution of assets, to be entered on or before the expiration of the time limited for the payment of debts.

Section 13895 also contemplates that the probate court enter an order causing notice to be given to creditors of the time appointed for the payment of debts under such decree, and the next section provides as follows:

"If, after notice shall have been given as provided in the preceding section, any creditor shall neglect to demand from the executor or administrator his debt, or the dividend thereon, within two years from the time so limited for the payment of the debts, or if the notice shall be given after such time within two years from the last publication, the claim of such creditor shall be forever barred."

It is urged by appellant that in the absence of a decree requiring the payment of the debts, and a notice to creditors in regard thereto, no statute of limitations applies, so long as the estate remains open, and that there was no such decree or notice here, the probate court advisedly deferring such action with the consent of all concerned, and reference is made to the case of *Peckham* v. *Hoag*, 92 Mich. 423, which it is claimed rules this case. In that case administration was granted in 1874. Plaintiff's claim was presented, proven and allowed in 1880, and an order made requiring the administratrix to pay the debts within 90 days. Attempted sale of real estate to pay debts was made the same year, but was not confirmed because no oath or bond was filed. No further steps had been taken by the administratrix for the payment of debts. Plaintiff filed a petition for the removal of the administratrix. It was contended on the part of the respondent, among other things, that,

"Unless there is some method whereby the lands

can now be sold by the administratrix, under the order of the probate court, the petitioner and other creditors cannot be benefited by continuing the administration; and that, Mr. Hoag having died May 8, 1874, the time has now gone by when a sale of the real property could be made by the administratrix under such order."

This court said in July, 1892:

"It appears conclusively, however, that the estate had not been closed at the time the application was made in this present proceeding. The jurisdiction to administer the estate and to sell the real estate for the payment of the debts has not, therefore, been lost by lapse of time. * * * The case will be certified to the probate court of Berrien county, directing that court to proceed upon the petition for the removal of the administratrix, to the end that the proceedings may be taken for the sale of sufficient of the real estate of the deceased for the payment of the debts."

It will be noted that this action was directed upwards of 18 years after the death of Mr. Hoag. It is urged by appellant that if there were no other decisions to the same effect in this State, the rule here announced should be construed to constitute a rule of property; that creditors should not be deprived of their rights because, after having come into court and duly proved their claims, they have in good faith left the matter in the hands of the administrator and the probate court, the delay harming no one, and having been with the knowledge and consent, and inuring to the benefit of the heirs in whose shoes the plaintiffs stand.

The recent case of *Ogooshevitz* v. *Arnold*, 197 Mich. 203, is referred to as asserting the same doctrine. In that case it was said:

"One who buys land from heirs or devisees before the estate is closed takes it subject to the debts and expenses of administration. * * * There is a way provided in the statute for foreclosing claims against estates of decedents, viz.: appointment of commission-

ers, or a hearing of claims by the probate judge, and closing the estate; prior to 1915, this was the only method by which they might be barred."

The trial court and the plaintiffs relied mainly upon *Hoffman* v. *Beard*, 32 Mich. 218. It is the claim of appellant that that case is readily distinguished·on its facts from the instant case, in that there the estate had been closed several years before the sale was made; and that while there is language used in that opinion which would seem to justify the holding of the trial court in the instant case, yet the rule there stated was discarded and overruled in *Larzelere* v. *Starkweather*, 38 Mich. 96. In this last named case the opinion was written by the same Justice (MARSTON) about three years later, and the claim being made there, as here, that under the rule of *Hoffman* v. *Beard,* the probate court had lost jurisdiction, the court said:

"In delivering the opinion in *Hoffman* v. *Beard* this court had no intention of holding that under no circumstances could the probate court order a sale of the real estate of a deceased person for the payment of his debts, or that such a sale for such purpose could not be made after four years and six months from the granting of letters of administration. No such question was involved or decided in that case. Nor were the facts in that case such as would justify the court in coming to, and announcing such a conclusion. Some expression may be found in the reasoning in the opinion delivered in that case, which taken alone might give color to such an idea. The reasoning in an opinion is not that of the court, but of the judge who prepares and delivers it. It may, or may not, be considered sound and unanswerable, and as such is the subject of criticism. The conclusion arrived at and announced upon the several questions discussed and essential to a proper disposition of the case, is that of the court, and in concurring in such conclusions it is not generally supposed or understood that everything contained or said in the opinion is thereby

unqualifiedly and unquestionably adopted as the opinion of the court. * * * In other words, the opinion and decision of a court must be read and examined as a whole in the light of the facts upon which it was based. They are the foundation of the entire structure which cannot with safety be used without reference to them. That the general rule laid down and the conclusion reached in *Hoffman* v. *Beard* was correct, as the facts stood in that case, we have as yet seen no reason to doubt, but that exceptions to such general rule exist, where, after the expiration of the time there stated, the probate court has jurisdiction to order a sale of the real estate of the deceased, for the payment of his debts, we have no doubt. Cases may frequently arise under our statutes, owing to delays arising from causes over which the administrator and probate court have no control, where the estate cannot be closed and settled within the usual and ordinary period. In all such cases the probate court does not lose its jurisdiction, when properly invoked, to order a sale of the real estate, and a sale made in accordance therewith will be valid and binding. Such has been the construction placed upon similar statutory provisions by the courts of other states," citing the statutes and decisions.

The following cases are also cited by appellant: *In re Estate of Beniteau,* 88 Mich. 152, 154; *Church* v. *Holcomb,* 45 Mich. 29, 37; *Norman* v. *Olney,* 64 Mich. 553; *In re Moores' Appeal,* 84 Mich. 474; *In re Palms' Appeal,* 44 Mich. 637; *Averill* v. *Jackson City Bank,* 114 Mich. 20, 26; *Long* v. *Landman,* 118 Mich. 174; *Card* v. *Fowler,* 120 Mich. 646, 653; *Brooks* v. *Hargrave,* 179 Mich. 136, 144; *Bresler* v. *Wayne Probate Judge,* 152 Mich. 167; *In re Reid's Estate,* 170 Mich. 476, 483, 484.

The trial court seems to have thought that the question involved was controlled by the following decisions of this court: *Hoffman* v. *Beard,* 32 Mich. 218; *Brown* v. *Forsche,* 43 Mich. 492; *Winegar* v. *Newland,* 44 Mich. 367, 370; *Pratt* v. *Houghtaling,* 45 Mich. 457; *In re Young's Estate,* 144 Mich. 663.

We have already called attention to the cases which discarded the rule stated in the *Hoffman Case,* and we are of the opinion that the other cases relied upon by the trial court and the appellees do not establish or support the rule contended for.

The facts in the *Young Case* readily distinguish it from the instant case. In that case a decree for the payment of debts in accordance with the statute was entered about ten years prior to the application for license to sell real estate, claimant, herself the administratrix, who had paid most of the debts out of her own funds, having notice of it. It is also apparent that the estate had first been treated as closed, for on filing her first account, the administratrix showed that she had paid out more than she had received, and the order allowing the account "recited that she was discharged as administratrix." She had a life estate of all the property under the will. It does not appear whether or not the attention of the court in that case was called to the ruling in *Peckham* v. *Hoag, supra,* and other similar cases. We find no language in the opinion indicating that the *Peckham Case* was overruled or intended to be, or the rule there stated modified; and while some of the language of the opinion would seem to be out of harmony with that case, yet when applied to the facts involved such want of harmony is more apparent than real.

The appellees are in no better position than would be the heirs from whom they purchased, with full knowledge of the claims of creditors. They cannot be considered good faith creditors.

In our opinion there is no statute of limitations to prevent the creditors of the estate from obtaining the delayed payment of their adjudicated claims, under the circumstances here existing.

The estate remains open, and in the charge and control of the probate court.

We are of the opinion that the probate court was right in granting license to sell, and that the order and judgment of the circuit court should be reversed, and the cause remanded, with instructions to enter an order affirming the order of the probate court, in accordance with this opinion, with costs to appellant.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.